*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
January 21, 2021

v

No. 349467
Isabella Circuit Court
LC No. 2018-001538-FH

TONY RASHAWN YARBER,

        Defendant-Appellant.

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and RICK, JJ.

PER CURIAM.

Defendant, Tony Rashawn Yarber, appeals by right his convictions, following a jury trial, of unlawful imprisonment, MCL 750.349b(1)(c) (facilitation of a felony), and domestic violence, MCL 750.81(2), as a fourth-offense habitual offender, MCL 769.12. Defendant was acquitted of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (sexual penetration by use of force or coercion). The trial court sentenced defendant to serve 11 years and 10 months to 40 years in prison, with credit for 58 days served, for his unlawful-imprisonment conviction; and 93 days in jail for his domestic-violence conviction, with credit for 93 days served. We affirm defendant's convictions and sentences.

## I. FACTUAL BACKGROUND

The victim and defendant lived together. Defendant became aggressive with the victim after they found out she was pregnant. In July 2018, defendant became angry and pinned her to a couch hard enough to leave red marks, and she did not call the police because she hoped the situation would get better. The victim testified, "from day one [defendant] had said[,] never call the police, he knew to [sic] many people from being in prison . . . or outside. Just wouldn't have ended well if I had." Defendant testified that his relationship with the victim "was great" and they did not have any dispute until August 2018.

According to the victim, her relationship with defendant became progressively worse. She was aware that he was flirting with other women, and in August 2018, defendant found text messages on her phone in which she was flirting with another man. She testified that, on August 19, 2018, she told defendant that she "wanted out." According to defendant, he was walking to

work on August 20, 2018, when his boss informed him that he was not needed at work. Defendant testified that when he returned to the apartment, the victim's phone was repeatedly vibrating, and when he investigated, he discovered text messages from another man.

Both the victim and defendant testified that defendant woke the victim up by tearing the covers off her and that he was angry. Defendant testified that he and the victim had an argument and he told her to leave, "then that was that." However, the victim testified that defendant pounced on her, pinned her down by the neck, and said that he would have beaten her if she was not pregnant. She told him that she had to get ready for work, but defendant refused to let her leave until she had sex with him. She did not want to have sex with defendant, and she repeatedly told him "no," but she eventually stopped fighting him.

The victim testified that what had happened did not sink in until she left work. She went to stay at a friend's house after work, and she took a couple days off from school. A friend of the victim testified that she arrived at his house "rather hysterical, holding back tears," and that she was not calm. She told the friend that defendant had forcefully pinned her down and taken advantage of her. The victim later told her instructors what had happened, and they persuaded her to call the police. A police officer testified that he interviewed the victim, who described that defendant had held her down for two or three minutes, then let her up. She told the officer that she began to get ready for work, but defendant told her that she could not leave until she had sex with him.

At the trial, defendant's then-fiancée, a different person from the victim in this matter, testified about a domestic-violence incident in December 2018. During that incident, defendant became aggressive after he believed the fiancée's son had stolen a video game, and she testified that he repeatedly smacked her head, grabbed her by the chin, and said that he could kill her and her son. A police officer testified that the fiancée reported that defendant had choked her and demonstrated choking. However, at trial, the fiancée denied that defendant had choked her.

The jury found defendant not guilty of CSC-III, but guilty of unlawful imprisonment and domestic violence.

## II. COLLATERAL ESTOPPEL

Defendant argues that the prosecution was collaterally estopped from prosecuting his criminal case after he was acquitted of the same conduct during a parole-violation hearing. We disagree, because the issues decided at defendant's parole hearing were not identical to the issues decided at his criminal trial.

Both the United States and Michigan Constitutions protect a criminal defendant from being placed in jeopardy twice for the same offense. *People v Szalma*, 487 Mich 708, 715-716; 790 NW2d 662 (2010). The double-jeopardy clause precludes relitigation of issues that were necessarily decided by a previous acquittal. *Yeager v United States*, 557 US 110, 119; 129 S Ct 2360; 174 L Ed 2d 78 (2009). "A double jeopardy challenge presents a question of constitutional law that this Court reviews de novo." *People v Smith*, 478 Mich 292, 298; 733 NW2d 351 (2007). This Court reviews de novo the application of collateral estoppel. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

When an acquittal has decided an issue of ultimate fact, the issue cannot be litigated again in a second trial for a separate offense. See *Ashe v Swenson*, 397 US 436, 443-445; 90 S Ct 1189; 25 L Ed 2d 469 (1970). However, "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Id*. at 444. Although collateral estoppel may apply to bar litigation in a civil case of an issue decided in a criminal case, courts "hesitate to apply collateral estoppel in the reverse situation." *Trakhtenberg*, 493 Mich at 48. For collateral estoppel to apply, the ultimate issue must be identical, not merely similar. *People v Zitka*, 325 Mich App 38, 45; 922 NW2d 696 (2018). Collateral estoppel may also be inappropriate where the two proceedings have fundamentally different purposes. See *id*. at 47.

Significantly, parole revocation proceedings are not actually criminal prosecutions, and instead are contested cases under the Administrative Procedures Act (APA), MCL 24.201 *et seq*. *In re Parole of Bivings*, 242 Mich App 363, 369; 619 NW2d 163 (2000). Unlike a criminal prosecution, the purpose is only to determine whether a paroled prisoner violated a condition of parole.[1] See MCL 791.240a(8)-(10). At his parole-violation hearing, defendant was alleged to have engaged in "sexually assault[ing] and/or threaten[ing]" the victim, and "engag[ing] in behavior that was assaultive, abusive, threatening and/or intimidating towards" the victim. In his criminal proceeding, defendant was charged with criminal sexual conduct by force or coercion, unlawful imprisonment, and domestic violence. The Parole Board found defendant not guilty. However, the Parole Board is not a court of law. Rather, the purpose of the parole-violation hearing was not to determine whether defendant committed any particular crime, or even whether he specifically committed the particular misconduct upon which his criminal charges were based.[2] Thus, the Parole Board's finding that the evidence presented at that hearing was insufficient to establish a parole violation does not collaterally estop a criminal prosecution based on the same incident or incidents.

## III. INCONSISTENT VERDICT

Defendant argues that the jury's verdict was inconsistent because it acquitted him of CSC-III, which was the predicate offense to the unlawful-imprisonment charge on which the jury found

---

[1] Thus, it is identical in this respect to a probation violation hearing, which is also not a criminal prosecution and "not burden the probationer with a new conviction or expose the probationer to punishment other than that to which the probationer was already exposed as a result of the previous conviction for which the probationer was placed on probation." *People v Burks*, 220 Mich App 253, 256; 559 NW2d 357 (1996).

[2] Indeed, according to the transcript of the October 22, 2018, parole hearing provided to us by defendant, his charge of "assault" and "sexual assault" were treated as duplicative as both being some "kind of assault or intimidating behavior." However, we do not rely on this observation, because the parole hearing transcript was not included in the lower court record, MCR 7.210(A)(1), and we generally consider materials not in a lower court record only for purposes of determining whether we should remand a matter for an evidentiary hearing inquiring into the effectiveness of trial counsel. See *People v Moore*, 493 Mich 933, 933; 82 NW2d 580 (2013).

him guilty. Defendant waived this issue by expressly agreeing to instruct the jury that it did not need to reach the same verdict for CSC-III and unlawful imprisonment.

A defendant waives an issue by expressly approving of the trial court's action. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000). A waiver extinguishes any error, leaving nothing for this Court to review. *Id.* at 215. Defense counsel's affirmative statement that he or she has no objections is an express approval of the trial court's action. *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011).

During deliberations, the jury sent out a note to ask whether it needed to reach the same verdict for CSC-III and unlawful imprisonment. The trial court stated that it planned to tell the jury that the answer to its question was "no." It then asked defense counsel if he had any comment, and defense counsel responded, "No." The trial court instructed the jury that the answer to its question was no, and it stated that each of the crimes was a separate crime and should be considered separately. Following the instruction, the trial court asked, "Any objections to how I handled it?" Defense counsel responded, "No, Your Honor." Because defendant expressly approved of instructing the jury that it did not need to reach the same verdict regarding CSC-III and unlawful imprisonment, defendant has waived this argument. In any event, as defendant properly concedes, juries are generally permitted to render inconsistent verdicts. *People v Vaughn*, 409 Mich 463, 465-466; 295 NW2d 354 (1980). Furthermore, MCL 750.349b(1)(c) requires restraint "to facilitate the commission of another felony," which does not necessarily require the other felony to be successfully completed. Thus, the jury could believe defendant restrained the victim for the purpose of facilitating a sexual assault without necessarily finding that a sexual assault actually occurred. The jury's verdict was therefore not necessarily inconsistent, nor does it suggest that the jury was confused.

## IV. OTHER-ACTS EVIDENCE

Defendant argues that the trial court should have excluded the evidence that defendant had committed domestic violence against his fiancée. We disagree, because the prosecution's notice was timely, defendant knew the proposed testimony, and the trial court did not plainly err by failing to rule that the evidence was more prejudicial than probative.

We ordinarily review a trial court's decision whether to admit evidence for an abuse of discretion. *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). However, "issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances." *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). In response to the prosecution's notice of intent to introduce other-acts evidence, defendant objected on the grounds that the late notice prejudiced him, and his attorney was not aware of the fiancée's testimony. This objection is preserved. Defendant also argues on appeal that the evidence was substantially more prejudicial than probative under MRE 403. A challenge to one issue is not sufficient to preserve a challenge to another issue, so defendant's MRE 403 objection is unpreserved and will be reviewed only for plain error, meaning a clear or obvious error occurred and that error affected the outcome of the lower court proceedings. *People v Kimble*, 470 Mich 305, 309, 312; 684 NW2d 669 (2004).

We disagree that the prosecution's notice was not timely. The notice was filed on March 13, 2019; at which time trial was scheduled to commence on April 1, 2019. This was more than the 15 days required by MCL 768.27b(2). Furthermore, trial did not actually commence until May 6, 2019. Secondly, defendant argues that the prosecution did not "disclose the evidence" as also required by MCL 768.27b(2). The prosecution's notice of intent only stated that it might introduce testimony from the fiancée regarding the domestic violence incident that resulted in defendant's charges in another case. In an attached motion, the prosecution disclaimed a need to provide further explication because defendant knew the fiancée's testimony from the preliminary examination in that other case. Although it might have been better practice to provide a summary, the prosecutor was correct. The content of the other-acts evidence must be disclosed "to *the defendant*," not to defense counsel. See MCL 768.27b(2) (emphasis added). At the hearing on the motion, defense counsel acknowledged that defendant had been present when the fiancée testified. Regardless of whether defense counsel was present at that other preliminary examination, defendant had notice of the content of the other-acts testimony.

Finally, defendant argues that the trial court erred by failing to weigh the probative value and prejudicial effect of the testimony and by allowing the prosecution to use the other-acts evidence to corroborate the victim's testimony. The trial court did not plainly err by admitting this evidence.

Generally, if a defendant has been accused of domestic violence, evidence of defendant's commission of other acts of domestic violence is admissible if it is not excluded under MRE 403. MCL 768.27b(1). MRE 403 provides that, even if evidence is relevant, the trial court may not admit it if the danger of its prejudicial effect substantially outweighs its probative value. The prejudicial effect of the evidence substantially outweighs its probative value when evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight, or when use of the evidence is inequitable. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). It is especially important to raise challenges under MRE 403 in the trial court, because the trial court has the best opportunity to contemporaneously assess the relative weight of the evidence's probative value and prejudicial effect. See *id*.

Evidence is probative if it has *any* tendency to make a fact of consequence more or less probable. *People v Crawford*, 458 Mich 376, 389-390; 582 NW2d 785 (1998). The purpose of MCL 768.27b is to allow the jury to weigh the facts of the case in light of defendant's background and behavioral history. *Cameron*, 291 Mich App at 609-610. Therefore, evidence of defendant's behavioral history with his romantic partners was probative of whether defendant committed domestic violence against the victim on August 20, 2018.

We conclude that there was also no clear or obvious error concerning whether the evidence was unfairly prejudicial. Evidence is unfairly prejudicial if, when considered "in the context of the entire trial," it leads to the danger of confusing the issues, misleading the jury, or the presentation of needlessly cumulative evidence. *People v Watkins*, 491 Mich 450, 489, 486; 818 NW2d 296 (2012). Evidence of defendant's domestic violence against a different person was not likely to confuse or mislead the jury regarding defendant's actions toward the victim. Furthermore, the trial court properly instructed the jury that it must not convict defendant of the charged offenses solely because it believed defendant had committed other acts of misconduct. See M Crim JI 4.11a(4). Absent a narrow range of extraordinary circumstances not present here, juries are

presumed to follow their instructions. *Richardson v Marsh*, 481 US 200, 206-207; 107 S Ct 1702; 95 L Ed 2d 176 (1987); *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). The trial court's decision to admit the evidence of defendant's domestic violence against his fiancée was not clearly or obviously wrong.

## V. PROSECUTORIAL ERROR

Defendant argues that the prosecutor made a variety of errors during closing. We disagree.

This issue is not preserved. A defendant must timely and specifically challenge alleged prosecutorial error[3] before the trial court. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Defendant did not make any objections to the prosecution's statements during closing arguments. Generally, this Court reviews de novo issues of prosecutorial error. *Abraham*, 256 Mich App at 272. However, this Court reviews unpreserved claims of prosecutorial error for plain error affecting a defendant's substantial rights. *Unger*, 278 Mich App at 235.

First, defendant argues that the prosecutor argued facts not in evidence during his closing statement. We disagree. The facts either were in evidence, or they were reasonable inferences from the evidence.

A prosecutor may not argue on the basis of testimony that was not in evidence. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). However, a prosecutor has great latitude to argue all the facts in evidence, and the reasonable inferences arising from them, as they relate to the prosecution's theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Furthermore, the prosecutor may argue on the basis of the evidence that a witness should or should not be believed, *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005), including a defendant who chooses to testify. *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). However, a prosecutor may not convey that he or she has special knowledge or facts indicating a witness's truthfulness. *Bahoda*, 488 Mich at 276-277. Additionally, this Court reviews the prosecutor's comments in context, and in light of the defendant's arguments and the evidence presented in the case. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Id*.

Defendant argues that the prosecutor argued facts not in evidence by stating that defendant told the victim that he had associates who would harm her. During trial, the victim testified, "[Defendant] always, from day one he had said[,] never call the police, he knew to [sic] many

---

[3] The term "prosecutorial misconduct" is a term of art, but often inaccurate or misleading when applied to conduct that is neither extreme nor illegal. *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Thus, the term "prosecutorial error" is usually more proper, and so we use that term here. Nevertheless, the distinction is only one of terminology, so the same standards apply. See *id*. at 88.

people from being in prison . . . or outside. Just wouldn't have ended well if I had." This argument was a reasonable inference from the victim's testimony.

Defendant argues that the prosecutor argued additional facts not in evidence by stating that it was "funny" that the fiancée remembered details of the domestic-violence incident but did not remember that she told a police officer that she was choked and demonstrated the choking. The fiancée testified that she did not recall telling the police officer that defendant grabbed her by the neck. The police officer testified that the fiancée told him that defendant put both his hand around her neck and squeezed, and "she put both of her hands up around her throat like this (witness demonstrates) . . . " These facts were in the evidence.[4]

Defendant argues that the prosecution argued facts not in evidence when he stated that the victim was nervous and her testimony was not rehearsed. When the victim took the stand, she agreed that she was nervous. Additionally, during closing argument, defense counsel argued that the victim sounded rehearsed. During rebuttal, the prosecutor argued that simply because the victim used the same words to describe both assaults did not mean it was rehearsed. The prosecutor also argued: "You heard her testimony, she didn't review the—her prior testimony transcripts with the prosecutor or anybody else, she hadn't read them. Her testimony was not rehearsed." In context, these statements were a permissible response to defense counsel's closing argument.

Secondly, defendant argues that the prosecutor improperly vouched for the victim's credibility. We disagree. The prosecutor repeatedly argued that the jury should believe the victim. We have reviewed the statements that defendant alleges are improper, and each was an argument that the jury should believe the victim was credible on the basis of her testimony in the case. Additionally, to the extent that defendant argues that the prosecutor argued that it was known who sexually assaulted the victim, this was part of a direct response to defense counsel's argument that the victim did not have a rape kit performed. The full context of the statement was: "There's no rape kit in this case. This isn't a stranger situation, we knew—we know who committed the sexual assault, we know who sexually assaulted [the victim], we don't need any D-N-A or physical evidence." When considered in context, this argument that identity was not at issue was both correct and a direct and permissible response to defense counsel's argument.

Third, defendant argues that the prosecutor impermissibly shifted the burden of proof. We disagree. "Arguments involving claims that the prosecutor's questions, argument, or instructions 'shifted the burden of proof' often present a confused potpourri of analytically distinct claims." *People v Fields*, 450 Mich 94, 104; 538 NW2d 356 (1995). Relevant to this matter, the prosecutor may not suggest to the jury that it should find the elements of a charged offense proved because defendant failed to advance evidence affirmatively disproving an element. *Id*. at 113. Nevertheless, once a defendant does affirmatively advance an alternative theory of the case that would exonerate him or her, the prosecutor may properly comment on weaknesses in that theory, including the defendant's failure to call corroborating witnesses. *Id*. at 115. Because defendant chose to testify, he necessarily waived his right not to testify; therefore, any prosecutorial

---

[4] Insofar as we can discern from defendant's brief, defendant does not challenge the trial court's ruling that the police officer's testimony was admissible pursuant to MCL 768.27c; but rather, as discussed, only presents an argument as to MCL 768.27b.

commentary on deficiencies in defendant's testimony cannot have infringed upon defendant's right not to testify. See *id*. at 109. The prosecutor argued that defendant had not provided corroborating evidence to establish that he had left the apartment but returned after being told he was not needed at work, or to establish that he turned himself in to the police when he learned they were looking for him. Because these comments did not involve elements of any charged offense and were comments on defendant's own testimony, they did not impermissibly shift the burden of proof and thus did not constitute errors warranting reversal.

Fourth, defendant argues that the prosecutor denigrated defendant by arguing that defendant was misleading the jury. We disagree. The prosecutor may not "denigrat[e] a defendant with intemperate and prejudicial remarks." *Bahoda*, 448 Mich at 283. The prosecutor may not argue that defense counsel is intentionally misleading the jury, because the argument undermines the defendant's presumption of innocence. *Unger*, 278 Mich App at 236. However, the prosecutor need not confine commentary to "the blandest possible terms." *Id*. at 239. As discussed, the prosecutor may also argue on the basis of the evidence that defendant should not be deemed credible. *Launsburry*, 217 Mich App at 361. In context, the prosecutor argued that defendant denied having sex with the victim because "what else can he say? I mean he's got to deny the allegations that are against him." The prosecutor then argued that defendant "blew over" aspects of the incident and forgot important details, and that his version of events "was incredible." Notably, the prosecutor did not argue that defense *counsel* was attempting to mislead the jury. See *Unger*, 278 Mich App at 236-238. Considered in context, the prosecutor's remarks were permissible, if colorful, comments on the credibility of defendant as a witness, rather than an argument that defense counsel was intentionally misleading the jury.

Additionally, defendant argues that the prosecutor's argument about defendant's decision to turn himself in was misleading. The prosecutor argued that, after the incident, defendant left for Grand Rapids, but "when he got back he turned himself in as if, I don't know, is he saying I turned myself in because I'm an innocent guy. No, he knows enough that it looks better if you turn yourself in than being arrested." Defendant in fact testified that, after the incident, the fiancée drove him to Grand Rapids. Defendant also testified that after he learned the police were looking for him, he found a police officer to turn himself in. The prosecutor's arguments were permissible arguments from the facts and reasonable inferences from the evidence.

Finally, defendant argues that cumulative prosecutorial errors deprived him of a fair trial. The cumulative effect of several prejudicial errors may deprive the defendant of a fair trial, even if none of the individual errors would have warranted reversal standing alone. *Dobek*, 274 Mich App 106. However, because defendant has not shown any prejudicial error, he has not shown cumulative error.

## VI. SENTENCING CREDIT

Defendant argues that he was entitled to additional sentencing credits[5] because, although he was initially imprisoned related to his parole violation, he was acquitted of violating parole.

---

[5] Defendant received credit for 58 days' served.

We disagree. Regardless of defendant's parole determination, his imprisonment was related to his previous conviction, not the conviction for which he was sentenced in this case.

This Court reviews for clear error a trial court's factual determinations during sentencing. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). This Court reviews de novo issues of law. *Hardy*, 494 Mich at 438.

A defendant's right to sentencing credit is solely statutory. *People v Prieskorn*, 424 Mich 327, 333; 381 NW2d 646 (1985). MCL 769.11a provides that, when a person has served time on a void sentence, if the defendant is convicted or pleads guilty "based upon facts arising out of the earlier void conviction," the trial court shall grant the defendant credit for the time already served. Additionally, if a defendant has served time in jail before being sentenced "because of being denied or unable to furnish bond for the offense of which he is convicted," the trial court shall grant the defendant credit for time served. MCL 769.11b. The sentencing credit statute was intended to place indigent defendants unable to afford bond on equal footing with more affluent defendants who can afford bond. *Prieskorn*, 424 Mich at 335, 343. Thus, it does not entitle defendants to credit for any time spent in confinement before sentencing, irrespective of the reason for the confinement, but rather only where the defendant was confined on the basis of the sentencing offense. *Id*. at 341-344.

A parolee who is incarcerated on a parole violation is not incarcerated " 'because of being denied or unable to furnish bond . . . .' " *People v Idziak*, 484 Mich 549, 562-563; 773 NW2d 616 (2009), quoting MCL 769.11b. In *People v Stewart*, 203 Mich App 432, 433; 513 NW2d 147 (1994), the defendant was on parole at the time he committed an armed robbery. The defendant was arrested and held in jail for eleven months on a parole detainer. *Id*. Prison authorities abandoned the parole-violation proceedings after the defendant was sentenced for the armed robbery. *Id*. at 434. The time that the defendant spent in prison was credited to the offense he was serving while on parole, not his armed-robbery sentence. *Id*. Similar to the situation in *Stewart*, defendant was arrested and held on a parole detainer for 57 days, having been returned to prison by the Parole Board. Although the parole disposition was in defendant's favor, the result is the same as the abandoned parole-violation hearing in *Stewart*: defendant was not found to have violated his parole. We conclude that the time attributed to defendant's return to prison by the Parole Board was properly credited to the sentence for which defendant was on parole, not to the sentence for his new convictions.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

In the brief filed by defendant under Michigan Supreme Court Order 2004-6, Standard 4, defendant first argues that trial counsel provided ineffective assistance by disclosing the transcript of his parole hearing to the prosecution.[6] We conclude that defendant was not prejudiced because

---

[6] Unlike hearings for whether to grant parole, fact-finding hearings for whether to revoke parole are not necessarily public. Cf., MCL 791.234(8)(c) and MCL 791.244; MCL 791.240a.

defense counsel would have been required to disclose the transcript to the prosecution before introducing it into evidence.

This issue is not preserved. A party must move the trial court for a new trial or evidentiary hearing in order to preserve his or her claim that counsel provided ineffective assistance. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Defendant did not move for a new trial on this basis or move in this Court for a remand for an evidentiary hearing. Generally, when considering an ineffective assistance of counsel claim, this Court will review the trial court's findings of fact for clear error and review de novo questions of law. *Trakhtenberg*, 493 Mich at 47. However, when a party has not preserved a claim of ineffective assistance of counsel, "this Court's review is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

To prove that defense counsel was not effective, the defendant must show that defense counsel's performance fell below an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 52. The defendant must also show that there is a reasonable probability that counsel's deficient performance prejudiced the defendant, meaning "a different result would have been reasonably probable." *Id*. at 55-56 (quotation omitted). Because a defendant must establish both prongs of the test, this Court may reject an ineffective-assistance claim on the basis of a lack of prejudice alone. *People v Reed*, 449 Mich 375, 400-401; 535 NW2d 496 (1995).

On request, a party must provide all other parties with "a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document . . . with copies to be provided on request." MCR 6.201(1)(A)(6). To the extent defendant sought to introduce portions of the transcript of his Parole Board hearing, the prosecution was entitled to inspect the document. Defendant cannot establish that, but for defense counsel's disclosure of his strategy to introduce the Parole Board hearing transcripts, the results of his proceeding would have been different.

Secondly, defendant argues that trial counsel provided ineffective assistance by failing to introduce the victim's phone records. The party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of his or her argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). At trial, defense counsel in fact approached the victim with an exhibit that depicted text messages by defendant and responses by the victim. Defense counsel questioned her about the exhibit, and she admitted responding to some of defendant's questions. Therefore, defense counsel did in fact introduce the phone records.

## VIII. 180-DAY RULE

In defendant's Standard 4 brief, he argues that the trial court did not honor his right to a speedy trial within 180 days. We disagree.

A defendant has a right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20. When the Department of Corrections receives notice that there is a pending complaint against an inmate of a correctional facility, the inmate shall be brought to trial within 180 days of when the Department provides notice to the prosecuting attorney. MCL 780.131(1). When considering the 180-day rule, courts count periods attributable to the prosecution and exclude delays attributable

to the defendant. See *People v Crawford*, 232 Mich App 608, 613-614; 591 NW2d 669 (1998). This Court reviews for clear error the trial court's attributions of delay under the 180-day rule. *Id.* at 612. A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *Reese*, 491 Mich at 139.

On February 6, 2019, defendant moved to adjourn his jury trial, which was then scheduled for February 12, 2019. Defendant argued that he could not proceed without a copy of his parole hearing transcripts, because they concerned the same topics as his criminal trial and the hearing was adjudicated in his favor. Defense counsel explained, "I believe my client is in agreement with the stipulation for an adjournment as long as it does not interfere with his hundred and eighty day speedy trial." The parties stipulated to adjourn defendant's criminal case "in the interest of justice to allow additional time to review additional discovery requests and review the parole hearing transcript . . . ." The trial court granted the adjournment, but did not mention the 180-day rule when doing so. Defendant later moved to dismiss on the basis of the 180-day rule. The trial court determined that more than 180 days had not passed because defendant had consented to adjournments. Specifically, defense counsel had stipulated to an adjournment from February 12, 2019 to April 1, 2019, and that 76-day period was not included in the 180-day period.

We are not definitely and firmly convinced that the trial court made a mistake by attributing the delay from February 12, 2019 to April 1, 2019 to defendant. The parties' stipulations of law are not binding. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 385; 741 NW2d 61 (2007). Although defense counsel indicated that defendant would stipulate to an adjournment if that adjournment did not affect the 180-day period, the stipulation that the parties ultimately signed did not include this statement. Regardless, any stipulation about the legal application of the 180-day rule would not have been binding on the trial court.

## IX. DEADLOCKED-JURY INSTRUCTION

Defendant also argues that the trial court erred by instructing the jury to continue deliberating. This issue is waived. As previously discussed, counsel's affirmative statement that he or she has no objections is an express approval of the trial court's action. *Kowalski*, 489 Mich at 504-505. After receiving a note that the jury had deadlocked, the trial court proposed to read the standard deadlocked-jury instruction. The trial court asked if the parties would have any objection to that response, and defense counsel replied, "No, Your Honor." Defendant waived this issue by expressly approving of the trial court's deadlocked-jury instruction.

Defendant additionally argues in his Standard 4 brief that the trial court erred when it "disclosed the merits of the case to the jury" by "disclosing a domestic violence charge." We conclude that defendant has not adequately presented this argument. Although parties *in propria persona* are entitled to more generosity and lenity in construing their pleadings than would be lawyers, they are not excused from supporting their claims and arguments. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976). Thus, even parties *in propria persona* may not merely state a position and leave it to this Court to find support for that position. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). To the extent defendant's argument can be understood literally as asserting that the jury should not have been made aware of the substance of this case, we cannot agree because the jury could not perform its role without

-11-

understanding the substance of the case. To the extent defendant argues that his domestic violence charge was inadmissible, we have already rejected any such argument above.

## X. SUPPRESSION OF EVIDENCE

Defendant argues that the trial court abused its discretion by suppressing evidence of the result of the Parole Board hearing. We disagree, because the administrative law judge's determination of the witnesses' credibility was not relevant to defendant's criminal trial.

As discussed, we review the trial court's decision regarding whether to admit evidence for an abuse of discretion. *Cameron*, 291 Mich App at 608. The trial court may only admit relevant evidence. MRE 402. Relevant evidence is evidence that has any tendency to make a fact of consequence more or less likely to be true. MRE 401. It is improper for a witness to comment or provide an opinion on the credibility of another witness because the jury is to decide matters of credibility. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985); *Dobek*, 274 Mich App at 71. Absent extraordinary circumstances, only the trier of fact may resolve credibility of witnesses or conflicts in the evidence. *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998); *Drew v Cass Co*, 299 Mich App 495, 502 n 1; 830 NW2d 832 (2013).

Defendant sought to admit evidence that the administrative law judge at his parole-violation hearing determined that he had not violated his parole. When granting the prosecution's motion to exclude this evidence, the trial court reasoned that the parole hearing had a different burden of proof and may have involved collateral issues. It concluded that evidence of what happened at a parole hearing was not relevant to a criminal jury trial. As discussed above, we agree that the issues to be resolved at the parole hearing were different from the issues to be resolved at the criminal trial. Furthermore, the administrative law judge based his decision on assessing the credibilities of both defendant and the victim.[7] Thus, admission of the parole hearing testimony necessarily would have admitted another person's determination of the credibility of the witnesses, which would have improperly invaded the role of the jury.

Affirmed.

/s/ Brock A. Swartzle
/s/ Amy Ronayne Krause
/s/ Michelle M. Rick

---

[7] Because of defendant's *in propria persona* status as to his Standard 4 brief and the greater leeway he is therefore permitted, *Estelle*, 429 US at 106-108, we have chosen to exercise our discretionary power under MCL 7.216(A)(4) to consider the transcript of the parole hearing for the limited purpose of reviewing this issue in the interests of justice. See *People v Nash*, 244 Mich App 93, 99-100; 625 NW2d 87 (2000); *People v Parkmallory*, 328 Mich App 289, 293-294; 936 NW2d 877 (2019), vacated on other grounds and implicitly aff'd in relevant part 505 Mich 866 (2019).